**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

NAOMI RUTH CHEE,

      Plaintiff,

v.                                                                                 No. CV 16-1105 CG

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,

      Defendant.

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff Naomi Ruth Chee's *Motion to Reverse and Remand for a Rehearing With Supporting Memorandum* (the "Motion"), (Doc. 19), filed May 9, 2017; Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 23), filed August 7, 2017; and Ms. Chee's *Reply in Support of Plaintiff's Motion to Reverse and Remand for a Rehearing With Supportive Memorandum* (the "Reply"), (Doc. 24), filed August 23, 2017.

Ms. Chee filed applications for supplemental security income and disability insurance benefits on November 19, 2012, alleging disability beginning July 25, 2012. (Administrative Record "AR" 19). Ms. Chee claimed she was limited in her ability to work due to: seizure disorder, memory loss, broken tail bone, depression, stress, and a fractured ankle. (AR 249). Ms. Chee's applications were denied initially on March 29, 2013, and upon reconsideration on September 13, 2013. (AR 19). Ms. Chee requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 6, 2015,

before ALJ Frederick Upshall, Jr. (AR 38). At the hearing, Ms. Chee was represented by Sandra Sandoval, a claimant representative, and Ms. Chee and Nicole King, an impartial vocational expert ("VE"), testified. (AR 40-77).

On March 21, 2016, ALJ Upshall issued his decision, finding Ms. Chee not disabled at any time between her alleged disability onset date through the date of the decision. (AR 31). Ms. Chee requested review by the Appeals Council, (AR 14), which was denied, (AR 1-5), making the ALJ's decision the Commissioner's final decision for purposes of this appeal.

Through current counsel, Michael D. Armstrong, Ms. Chee now argues that the ALJ erred by failing to give proper reasons for rejecting portions of the opinions of Mark Simpson, Psy.D., and by failing to account for all of the moderate limitations in the opinions of Cathy Simutis, Ph.D., and Paul Cherry, Ph.D. (Doc. 19 at 13-19). In addition, Ms. Chee argues that the Appeals Council failed to analyze the opinion of Scott Nelson, M.D. *Id.* at 20-23. The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the ALJ erred in his consideration and weighing of the opinions of Dr. Simutis and Dr. Cherry, the Court finds that Plaintiff's motion should be **GRANTED IN PART**.

I.     **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008); *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir.

1992). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or show . . . that she has done so, are grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the Commissioner must show the claimant is able to perform other work in the national economy, considering the

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III. Background

Ms. Chee applied for supplemental security income and disability insurance benefits due to: seizure disorder, memory loss, broken tail bone, depression, stress, and a fractured ankle. (AR 249). At step one, the ALJ determined that Ms. Chee had not engaged in substantial gainful activity since July 25, 2012, the alleged onset date. (AR 21). At step two, the ALJ concluded that Ms. Chee was severely impaired by: borderline intellectual functioning, depression, history of opioid dependence, and diabetes mellitus. (AR 21-23). At step three, the ALJ determined that none of Ms. Chee impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (AR 23-24).

At step four, the ALJ found that Ms. Chee has the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). (AR 25). The ALJ found that Ms. Chee can lift up to 50 pounds occasionally, lift and carry up to 25 pounds frequently, stand and/or walk for approximately 6 hours in an 8-hour workday, and sit for approximately 6 hours in an 8-hour workday. The ALJ found no manipulative limitations, and found that Ms. Chee can occasionally stoop, crouch, kneel, and crawl, but should never climb ladders, ropes, or scaffolds. He found her ability to push and pull is unlimited except for the medium lift and carry limitation, and that she must avoid all exposure to unprotected heights and the use of moving machinery. With regard to mental impairments, the ALJ found that Ms. Chee is limited to simple, reasoning Level 1 tasks in a work environment free of fast-paced production demands or requirements,

and involving only simple, work-related decisions with few, if any, changes in the work place. Finally, the ALJ found that Ms. Chee is limited to occasional interaction with the public, incidental to the work being performed, and to occasional interaction with co-workers. *Id.*

In formulating Ms. Chee's RFC, the ALJ stated that he considered Ms. Chee's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. §§ 404.1529 and 416.929, and SSRs 96-4p and 96-7p. *Id.* The ALJ stated that he also considered opinion evidence in accordance with 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. *Id.*

In considering the medical opinion evidence, the ALJ noted that Ms. Chee underwent a consultative psychological evaluation in January 2013 by Mark Simpson, Psy.D. (AR 27). Dr. Simpson diagnosed Ms. Chee with depressive disorder and mild mental retardation, and assigned her a Global Assessment of Functioning ("GAF") score of 48. *Id.* Dr. Simpson also opined that Ms. Chee has moderate to marked limitations in her abilities to understand and remember detailed or complex instructions, work without supervision, attend and concentrate, carry out instructions, and interact with the public and supervisors, and adapt to changes in the workplace. (AR 28). The ALJ stated that he gave these opinions "mixed weight." *Id.* Specifically, the ALJ gave significant weight to Dr. Simpson's opinions concerning Ms. Chee's ability to understand and remember short and simple instructions and to interact with others because these opinions are supported by Dr. Simpson's examination findings. The ALJ gave little weight to Dr. Simpson's opinions regarding Ms. Chee's ability to adapt, concentrate, and carry out

6

instructions, stating that these opinions are unsupported by the evidence in the record. *Id.*

In addition, the ALJ considered the opinions of the State Agency physicians. The ALJ assigned significant weight to the September 13, 2013 opinions of Sterling E. Moore, M.D., regarding Ms. Chee's physical limitations, and assigned great weight to the March 27, 2013 opinions of Cathy Simutis, Ph.D., and to the September 13, 2013 opinions of Paul Cherry, Ph.D., regarding Ms. Chee's mental limitations. (AR 27-28). The ALJ further considered the lay statement of two friends of Ms. Chee at AR 257-66 and AR 1010, and found that these statements are not consistent with the medical evidence, so the ALJ did not afford them significant weight. (AR at 28). Finally, the ALJ gave little weight to the GAF scores given to Ms. Chee. *Id.*

The ALJ found that Ms. Chee is unable to perform any of her past relevant work, so the ALJ proceeded to step five. (AR at 29). At step five, the ALJ noted that Ms. Chee was 53 years old on the alleged disability onset date, and therefore classified as "an individual closely approaching advanced age" in accordance with the Regulations. *Id.* The ALJ also determined that Ms. Chee has at least a high school education and is able to communicate in English. *Id.* The ALJ noted that the VE testified at the hearing that an individual with Ms. Chee's same age, education, work experience, and RFC could perform the jobs of meat trimmer, floor waxer, and laundry worker. (AR at 30). The VE stated that those jobs existed in significant numbers in the national economy. *Id.* After finding the VE's testimony consistent with the Dictionary of Occupational Titles, the ALJ adopted her testimony and concluded that, because Ms. Chee is capable of performing

work existing in significant numbers in the national economy, she is not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 30-31).

## IV. Analysis

Ms. Chee argues that the ALJ erred in considering and weighing the opinions of Dr. Simpson, Dr. Simutis, and Dr. Cherry. (Doc. 19 at 13-19). Ms. Chee also argues that the Appeals Council erred by failing to consider the opinion of Scott Nelson, M.D., which was submitted to the Appeals Council after the ALJ issued his opinion. *Id.* at 20-23. The Commissioner responds that the ALJ properly considered the opinions of Dr. Simpson, Dr. Simutis, and Dr. Cherry. (Doc. 23 at 3-12). The Commissioner further contends that the Appeals Council did not err in its treatment of Dr. Nelson's assessment because the additional evidence did not provide a basis for changing the outcome of the ALJ's decision. *Id.* at 12-14.

Social Security Regulations require ALJs to evaluate every medical opinion in the record, including the opinions of non-examining State Agency physicians. *See* 20 C.F.R. §§ 404.1527(b)-(c), 416.927(b)-(c); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180 (July 2, 1996). Every medical source opinion should be weighed by the ALJ in consideration of the following applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citation omitted); *see also* 20 C.F.R. §§ 404.1527(c)-(d), 416.927(c)-(d). Ultimately, the ALJ must give good

8

reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that she ultimately assigns the opinions. *Langley*, 373 F.3d at 1119 (citation omitted). Failure to do so constitutes legal error. *See Kerwin v. Astrue*, 244 Fed. Appx. 880, 884 (10th Cir. 2007) (unpublished).

In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). Instead, an ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Further, the Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

### A. The ALJ's Consideration of Dr. Simpson's Opinions

Ms. Chee contends that the ALJ's reasons for rejecting portions of Dr. Simpson's opinions are too vague because the ALJ failed to point to specific instances in the record that dispute Dr. Simpson's findings. (Doc. 19 at 16). In response, the Commissioner contends that the ALJ properly supported his decision to reject portions of Dr. Simpson's opinion because the ALJ relied on Dr. Simpson's finding that Ms. Chee had no difficulty attending or concentrating during his evaluation of her, and because the ALJ stated that Plaintiff's activities of daily living show that she has less limitation than Dr. Simpson found. (Doc. 23 at 6). The Commissioner further contends that the ALJ supported his decision by noting that Ms. Chee knitted or sewed for four hours a day, which requires a certain level of concentration, and that Ms. Chee was alert,

9

responsive, and cooperative when she was discharged from a hospitalization in June 2012. *Id.* at 6-7. In addition, the Commissioner notes that various medical records in the record support the ALJ's decision because they reflect that Ms. Chee was alert, oriented, and had intact memory. *Id.* at 7-8. In her reply, Ms. Chee argues that these are impermissible *post hoc* rationalizations. (Doc. 24 at 2-3).

Dr. Simpson examined Ms. Chee in January 2013 and diagnosed her with depressive disorder and mild mental retardation, and assessed her with a GAF score of 48. (AR 655). Dr. Simpson also found that Ms. Chee has the following limitations: moderate to marked limitations in her abilities to understand and remember detailed or complex instructions, work without supervision, and adapt to changes in the workplace; and moderate limitations in her abilities to carry out instructions, attend and concentrate, and interact with the public and with supervisors. *Id.*

The ALJ stated that he gave Dr. Simpson's opinions "mixed weight." (AR 28). The ALJ gave significant weight to Dr. Simpson's opinions concerning Ms. Chee's ability to understand and remember short and simple instructions and to interact with others because these opinions are supported by Dr. Simpson's examination findings. *Id.* However, the ALJ gave little weight to Dr. Simpson's opinions regarding Ms. Chee's ability to adapt, concentrate, and carry out instructions. *Id.* In support of this conclusion, the ALJ stated that these opinions are unsupported by the evidence in the record, and noted that Dr. Simpson found that Ms. Chee had no difficulty attending or concentrating during his evaluation, and that Ms. Chee's activities of daily living indicate she has less limitation in these areas than Dr. Simpson opined. *Id.*

While Ms. Chee contends that the ALJ's decision lacks the specificity needed for the Court to meaningfully review his decision, the Court finds that the ALJ, instead, provided sufficiently specific reasons for his rejection of some of Dr. Simpson's findings. The ALJ relied on Dr. Simpson's own treatment notes and on Ms. Chee's description of activities of daily living for his decision to give little weight to Dr. Simpson's findings regarding Ms. Chee's ability to adapt, concentrate, and carry out instructions. For example, the ALJ noted Ms. Chee's statement that she engages in knitting and/or sewing for four hours a day, which the ALJ stated "requires a certain level of concentration." (AR 27). In addition, the ALJ noted that the State Agency physicians found that Ms. Chee is able to understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for 2 hours at a time, interact adequately with coworkers and supervisors, and respond appropriately to changes in a routine work setting. *Id.* (citing AR 80-131). Therefore, the Court rejects Ms. Chee's contention that the Commissioner improperly provided a *post hoc* rationale for the ALJ's decision, and finds that the ALJ provided a sufficient explanation as to the weight assigned to Dr. Simpson's opinions.

### B. The ALJ's Consideration of Dr. Simutis' and Dr. Cherry's Opinions

Next, Ms. Chee contends that the ALJ erred by failing to account for all of the limitations found by non-examining State Agency consultants Dr. Simutis and Dr. Cherry. (Doc. 19 at 17-19). Specifically, Ms. Chee contends that the ALJ failed to account for Dr. Simutis' and Dr. Cherry's findings that Ms. Chee is limited in her ability to accept instructions and respond appropriately to criticism from supervisors. *Id.* at 18-19. Ms. Chee argues that the ALJ's "failure to include the limitation in Ms. Chee's ability

to accept instructions and respond appropriately to criticism from supervisors assessed by Dr. Simutis and Dr. Cherry resulted in an incorrect RFC." *Id.* at 19.

In response, the Commissioner states that the findings by Dr. Simutis and Dr. Cherry that Ms. Chee is moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors were made in the Section I worksheet portion of their assessments, so these conclusions are not part of their formal opinions. (Doc. 23 at 9-10). Instead, the Commissioner argues that the Section III narrative conclusion is the actual RFC determination. *Id.* at 9. Therefore, the Commissioner contends that the ALJ did not err in according great weight to these doctors' opinions because the ALJ's RFC assessment accounted for the limitations found by Dr. Simutis and Dr. Cherry in their Section III narrative conclusions. *Id.* at 10. In addition, the Commissioner notes that Plaintiff's representative failed to respond to the VE's answers to the ALJ's questioning at the hearing, that Ms. Chee stated in a function report that she had never been fired or laid off from a job because of problems getting along with others, and that "none of the three occupations identified by the [VE], and relied on by the ALJ at step five, involve a significant amount of taking instructions or helping others." *Id.* at 11. The Commissioner thus concludes that "any alleged oversight on the ALJ's part in not expressly finding that Plaintiff was limited in her interaction with supervisors, as well as the public and co-workers, was harmless because Plaintiff was not prejudiced." *Id.* at 11-12.

In *Carver v. Colvin*, 600 Fed. Appx. 616 (10th Cir. 2015) (unpublished), the Tenth Circuit discussed the difference between Sections I and III of the MRFC Assessment. In considering whether the ALJ erred by failing to incorporate all of the Section I limitations

in a non-examining State Agency physician's MRFC Assessment, the Tenth Circuit explained that Section I "is for recording summary conclusions derived from the evidence in the file and directs that detailed explanation of the degree of limitation for each category is to be recorded in Section III." *Id.* at 618 (quotations and alterations omitted). That language is consistent with the Social Security Administration's Program Operations Manual System ("POMS"), which "provides that Section III of the MRFC, not Section I, is for recording a medical consultant's formal mental RFC assessment, and that adjudicators are to use the Section III narrative as the RFC assessment." *Id.* at 618-19 (discussing POMS DI 25020.010 B.1., POMS DI 24510.060 B.4.a., and POMS DI 24510.065 A.). However, the degree and extent of the capacity or limitation found in Section I must be described in narrative format in Section III, and Section III should "explain the conclusions indicated in [S]ection I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id.* at 619 (quoting POMS DI 24510.060 B.4.a. and B.4.b.). The Tenth Circuit observed that if a consultant's "Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Id.* (citing *Gorringe v. Astrue,* 898 F. Supp. 2d 1220, 1224-25 (D. Colo. 2012), and *Baysinger v. Astrue,* No. 11-cv-00333-WYD, 2012 WL 1044746, at *5-6 (D. Colo. Mar. 28, 2012) (unpublished)).

Applying these principles in *Carver*, the Tenth Circuit found that the consultant's Section III narrative "adequately encapsulated" his Section I finding that the claimant had a moderate limitation in his ability to accept instructions and respond appropriately

to supervisor criticism. *Id.* In Section III, the consultant opined that the claimant could "relate to supervisors and peers on a superficial work basis" and in a work scenario involving only "simple tasks with routine supervision." *Id.* The Court determined that these statements adequately explained the effects of a moderate limitation in the claimant's ability to accept instructions and respond appropriately to supervisor criticism, because "the ALJ sufficiently captured the essence of the Section III functional limitations by stating that Carver could understand, remember, and carry out simple instructions in a work-related setting and could interact with co-workers and supervisors, under routine supervision." *Id.* at 619-20. The Tenth Circuit reasoned that interacting with supervisors in the course of routine supervision over simple work was "tantamount" to the "superficial" interaction encountered in such jobs, and refused to "parse the ALJ's language too finely." *Id.* at 620.

In this case, Dr. Simutis and Dr. Cherry conducted MRFC Assessments on March 27, 2013, and September 13, 2013, respectively. (AR 87-89, 99-101; 113-15; 127-29). In Section I of the MRFC Assessments, they each found that Ms. Chee is moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors. (AR 88; 100; 114; 128). In Section III of their MRFC Assessments they provided narratives of their findings, stating that Ms. Chee can understand, remember, and carry out simple instructions; make simple decisions; attend and concentrate for two hours at a time; interact adequately with co-workers and supervisors; and respond appropriately to changes in a routine work setting. (AR 89; 101; 115; 129). In the ALJ's decision, he recited Dr. Simutis' and Dr. Cherry's Section III narratives, and stated that he gave their opinions great weight. (AR 27). The ALJ stated

14

that Ms. Chee is additionally limited to occasional interaction with the public, incidental to the work being performed, and to occasional interaction with coworkers. (AR 27-28).

While Dr. Simutis and Dr. Cherry accounted for most of their Section I findings in their Section III narratives, their Section III narratives did not address their findings that Ms. Chee is moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors. In *Carver*, the Tenth Circuit held that the consultant's Section III narrative accounted for the Section I moderate limitation in the claimant's ability to accept instructions and respond appropriately to supervisor criticism by opining that the claimant could relate to supervisors "on a superficial work basis" and in a work scenario involving only "simple tasks with routine supervision." 600 Fed. Appx. at 619. In contrast, Dr. Simutis' and Dr. Cherry's statements in their Section III narratives that Ms. Chee can interact "adequately" with supervisors fail to describe the effects of their Section I findings that Ms. Chee is moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors. Neither the consultants nor the ALJ explain how Ms. Chee can interact "adequately" with supervisors despite being limited in her ability to accept instructions and respond appropriately to criticism. Thus, the ALJ erred in relying on the opinions of Dr. Simutis and Dr. Cherry as substantial evidence supporting his RFC determination. *See id.* (holding that if a consultant's "Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding").

In addition, the ALJ's RFC determination does not account for Dr. Simutis' and Dr. Cherry's finding of a moderate limitation in Ms. Chee's ability to accept instructions and respond appropriately to criticism from supervisors. The ALJ limited Ms. Chee to simple, Reasoning Level 1 tasks,[2] and to occasional interaction with the public and co-workers; however, the ALJ's RFC determination does not include a limitation to superficial interactions with supervisors or to routine supervision. (AR 25). The ALJ, therefore, implicitly rejected Dr. Simutis' and Dr. Cherry's findings regarding Ms. Chee's limitations in interacting with supervisors, despite stating that he gave great weight to their opinions, which is legal error. *See Carpenter*, 537 F.3d at 1265 (finding that the ALJ inappropriately "'us[ed] portions of evidence favorable to his position while ignoring other evidence'") (citing *Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004)); *Haga*, 482 F.3d at 1208 (explaining that it is well-settled that "[t]he ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability").

The Commissioner relies on *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016), for her contention that the ALJ did not need to discuss Dr. Simutis' and Dr. Cherry's Section I findings because the ALJ relied on the Section III narrative. (Doc. 23 at 10). In *Smith*, the Tenth Circuit held the ALJ's RFC adequately incorporated all of the claimant's functional limitations, and the Tenth Circuit did not base its holding on the fact that the ALJ relied on Section III rather than Section I. 821 F.3d at 1269. Therefore, the Court finds that this case does not support the Commissioner's position. Moreover,

---

[2] Reasoning Level 1 is defined in the Dictionary of Occupational Titles as: "Reasoning Level 1 - Apply common sense understanding to carry out simple one or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." Dictionary of Occupational Titles, App. C., 1991 WL 688702.

a discrepancy between Sections I and III "does not mean, of course, that the ALJ should turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III." *Lee v. Colvin*, No. 15-6027, 631 Fed. Appx. 538, 541 (10th Cir. 2015) (unpublished).

Finally, the Commissioner contends that the ALJ's legal error is harmless because Plaintiff's representative should have responded to the VE's answers to the ALJ's questioning at the hearing, because Ms. Chee stated that she had never been fired or laid off from a job because of problems getting along with others, and because the occupations identified by the VE do not involve a significant amount of taking instructions or helping others. (Doc. 23 at 11-12). An ALJ's error may be harmless "in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly)," no reasonable factfinder could have decided differently. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Here, the ALJ's failure to account for the moderate limitations found by Dr. Simutis and Dr. Cherry may have resulted in a less restrictive RFC, and, consequently, in a different outcome for Ms. Chee. The Court therefore does not consider this case "the right exceptional circumstance" in which to invoke the harmless error rule. Instead, the Court finds that the ALJ's selective application of the opinions of Dr. Simutis and Dr. Cherry without explanation requires a remand for the ALJ to either incorporate their findings in the RFC determination, or explain why they are not included.

**V.     Conclusion**

For the reasons stated above, the Court finds that the ALJ properly considered the opinions of Dr. Simpson, but did not properly consider the opinions of Dr. Simutis

and Dr. Cherry. The Court does not decide the issue of whether the Appeals Council failed to consider the opinion of Dr. Nelson, which was submitted after the ALJ's decision, as that opinion will become part of the record on remand. The Court directs the ALJ, on remand, to weigh all medical opinions in the record.

**IT IS THEREFORE ORDERED** that Ms. Chee's *Motion to Reverse and Remand for a Rehearing With Supporting Memorandum*, (Doc. 19), is **GRANTED IN PART**, and that this case be **REMANDED** to the Commissioner for further proceedings.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE